Filed 10/16/25  In re M.H. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.H., et. al., Persons Coming Under the Juvenile Court Law. | B340510 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 24CCJP01910) |
| Plaintiff and Respondent, | |
| v. | |
| R.H., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Syna M. Dennis, Commissioner.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel for Plaintiff and Respondent.

———————————————

Father challenges the juvenile court's jurisdictional findings as to his two daughters made pursuant to Welfare and Institutions Code[1] section 300, subdivision (d) and (j). He argues there was insufficient indicia of reliability as to the younger daughter's statements to support the court's finding that father sexually abused her. We affirm because substantial evidence supports the juvenile court's findings.

## FACTUAL AND PROCEDURAL BACKGROUND

The family consists of mother, father, and their daughters, M.H. (born July 2016) and C.H. (born July 2020). In March 2022, mother obtained a restraining order against father. A year later, the parents divorced and mother was awarded sole legal and physical custody, with father receiving monitored visitation three days per week. At some later point, the parents verbally agreed that father's visits would be unmonitored and the weekend visit would be overnight.

At the time of these dependency proceedings, the children lived with mother. Father lived with his girlfriend and her three sons from another relationship in a two-bedroom home.

---

[1] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

## I. C.H.'s Statements Regarding the Sexual Abuse

In late May 2024, while with her babysitter, three-year-old C.H. cried when she went to the bathroom and complained of pain in her " 'pee pee,' " pointing to her vaginal area. C.H. told the babysitter that father had touched her in her " 'private area,' " pointing to her vaginal area with her finger. C.H. stated the abuse occurred at father's girlfriend's house, while she and father were in the kitchen or on the couch. C.H. told the babysitter that she had told mother about the sexual abuse. However, when the babysitter told mother about it in early June, mother stated C.H. had not reported it to her.

Upon learning about the sexual abuse, mother took C.H. to the hospital for an external/visual exam, which had no findings, and then to the police station. C.H. told the investigating police officer that father had put his finger inside her "private part" ten times a week. C.H. said her " 'private part' " was located between her legs. When asked, C.H. stated she was telling the truth. She stated that father takes his finger out and puts it back in multiple times. She explained it usually happens when father's girlfriend is cooking and her sister is in the room but not nearby. The sister, M.H., consistently denied abuse by father, and did not witness father abusing C.H.

DCFS investigated, and C.H. told the social worker, " 'Did you know my dad touches my private parts for no reason.' " C.H. reported that father would say " 'Come here' " and that the touching would happen on the couch. She stated that her sister, M.H., was also on the couch but not close enough to hold her hand. C.H. also stated that M.H. "punches her in her private parts."

3

During a forensic interview conducted by the Children's Advocacy Center in mid-June 2024, C.H. stated that "dad touched my pee really hard inside," that he "uses his finger to touch her private parts" and that he "put his finger in her private parts." C.H. reported that the touching happened more than once and that she asked father to stop touching her "private parts, [but] he keeps doing it." She said that it had happened on the couch when the girlfriend was making dinner and when M.H. was not close to her. She also said the assault happened when father was standing on the carpet. C.H. explained that her sister and father's girlfriend had not seen it happen. She stated that father ripped some of her clothing. During the forensic interview, C.H. also said that mother and the maternal grandmother touch her private parts. When the interviewer asked how mother's touch differed from father's, C.H. showed the interviewer by rubbing her finger on top of her other hand and stated that mother applies "medicine butter" so her "private part stops itching."[2]

Mother told DCFS that she had been in a relationship with Father for 18 years and never thought he would sexually assault their child. Mother "stated that at times, [C.H.] can say things that are not true or that have not happened" but C.H. had never before made up sexual abuse allegations. When mother found out about the sexual abuse from the babysitter, mother asked C.H. what had happened. C.H. told her that father put his fingers in her private parts, hurting her. C.H. stated this occurred when she was on the couch with father, father's girlfriend was in the kitchen, and M.H. was on the other side of the couch.

---

[2]     C.H. has severe eczema.

4

When mother told M.H. about C.H.'s disclosure, M.H. responded it was possible C.H. was referring to when father had applied cream for C.H.'s eczema rash. Hearing this, C.H. responded that M.H. was wrong and that C.H. was talking of another time. Mother did not know of father putting cream on C.H. until M.H. mentioned it. Mother said M.H. loved her father and it was possible M.H. would lie to protect him.

When interviewed by DCFS and the forensic interviewer, M.H. denied that father had ever touched her or C.H.'s private parts. She said father had only put " 'butt cream' " on C.H. with a Q-tip.

When questioned by police, father was shocked by the allegation and denied touching C.H. inappropriately. Father lived with his girlfriend, who denied seeing father touch the children inappropriately and did not suspect such conduct by father. Father told DCFS he could not think of how or where C.H. got the idea that he had touched her this way. He could not think of a scenario that C.H. misinterpreted. Father stated C.H. wipes herself when using the bathroom and has not had a rash; he stated he has not put cream on her. Father later stated that mother, mother's family, and the babysitter coerced C.H. to make the sexual abuse claims. During one monitored visit with M.H., father told M.H. that C.H. was lying.

## II.    Section 300 Petition and Detention

On June 18, 2024, the Department of Children and Family Services (DCFS) filed a petition which alleged the children were subject to juvenile court jurisdiction pursuant to section 300, subdivisions (b)(1), (d), and (j). The petition alleged that father sexually abused three-year-old C.H. by digitally penetrating her on multiple occasions, and the children were at risk of being

5

abused and suffering serious physical harm because of father's sexual abuse of C.H.

A detention hearing was held on July 3, 2024.  The court found a prima facie case that the children came within the ambit of section 300.  The court ordered the children removed from father's custody and released to mother's custody.

III.   **Jurisdiction and Disposition Hearing**

On August 21, 2024, the juvenile court conducted the jurisdiction and disposition hearing.  The court admitted DCFS's reports summarized above.

C.H.'s counsel asked the juvenile court to sustain counts (b)(1) and (d).  C.H.'s counsel stated C.H. "has repeatedly stated that father touches her for no reason and is able to distinguish this from when mother applies medication on her."  M.H.'s counsel asked the court to sustain all three counts and joined with C.H.'s counsel's argument as to counts (b)(1) and (d).  Citing the consistency of C.H.'s statements and the collateral statements by the babysitter and mother, M.H.'s counsel asked the petition to be sustained as pled.

Father's counsel asked the juvenile court to dismiss the section 300 petition for insufficient evidence.  Father's counsel said the allegations were a "misunderstanding."  Father's counsel stated that C.H. suffers from severe eczema and pointed out that C.H. "very credibly accused her mother, she very credibly accused of [*sic*] her grandmother of doing the exact same thing" she accused father of doing.  Father's counsel argued, "At most, it was [a] four-year-old['s] misinterpretation of the events[,] and even sexual battery criminal counts have exceptions for medical reasons."

DCFS asked the juvenile court to sustain all three counts. DCFS's counsel asserted "it's very clear . . . that [C.H.] can distinguish that, when mother and the grandmother apply or touch her private areas, it's with a purpose of applying cream versus when the father touches her which is for no reason on the couch when another adult in the home is away not able to observe." DCFS's counsel argued that when police interviewed C.H., "the child indicated that the father places one finger inside her private part by putting the finger back in multiple times. This does not appear to be a reasonable way to apply any sort of cream to a child to insert one finger multiple times into a child's vaginal area."

The juvenile court sustained counts (d) and (j), and dismissed count (b)(1). Counts (d) and (j) alleged that father "sexually abused the child, [C.H.] On multiple prior occasions, the father digitally penetrated the child, [C.H.]'s vagina by inserting the father's finger deep inside of the child's vagina causing the child pain. Such sexual abuse of the child, [C.H.] by the father endangers the child's physical health and safety and places the child, [C.H.] and the child's sibling, [M.H.] at risk of serious physical harm, damage, danger and sexual abuse."

The court stated, "I can appreciate that the minor is four years of age and she was only three years of age when the alleged abuse occurred. And I do note that there are some inconsistencies in her statement and also that she alleged that the mother and the grandmother also touched her inappropriately. [¶] However, I agree with the statements as presented by [DCFS's counsel] that the minor has made a distinction between inappropriate touching and touching that was done in response to the application of medication for eczema

7

and a rash[,] and the minor's statements were very clear that the father penetrated her private parts." The juvenile court concluded it could not ignore C.H.'s consistent statements.

As to disposition, mother's counsel asked the court to close the case with a juvenile custody order granting her sole physical and legal custody of the children. DCFS joined in mother's request as the children had remained safe in her care. C.H.'s counsel likewise joined mother's request to terminate jurisdiction, granting mother sole physical and legal custody.

M.H.'s counsel asked the court to maintain jurisdiction at M.H.'s request and due to other concerns not relevant to this appeal. Father's counsel asked for the children to be returned to his custody "for appellate purposes" and argued it was appropriate to keep the case open.

The juvenile court found that continued jurisdiction was not required because the children were safe in mother's care. The court terminated jurisdiction and awarded mother sole legal and physical custody of the children with father having monitored visitation.

Father appealed.

## DISCUSSION

Father argues there was insufficient indicia of reliability as to C.H.'s statements to support the court's finding that father sexually abused C.H. As we explain, substantial evidence supported the juvenile court's jurisdictional findings.

## I.    Applicable Law

Section 300, subdivision (d), provides the juvenile court may adjudge a child a dependent of the court if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the

8

Penal Code, by the child's parent." As relevant here, sexual abuse includes "child molestation" (Pen. Code, §§ 11165.1, subd. (a), 647.6) and "[i]ntrusion by one person into the genitals or anal opening of another person, including the use of an object for this purpose, except that, it does not include acts performed for a valid medical purpose" (Pen. Code, § 11165.1, subd. (b)(3)). Section 300, subdivision (j), provides the juvenile court may adjudge a child a dependent of the court if "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

"In reviewing a challenge to the sufficiency of the evidence supporting jurisdictional findings . . . , we 'consider the entire record to determine whether substantial evidence supports the juvenile court's findings.' [Citations.] 'Substantial evidence is evidence that is "reasonable, credible, and of solid value"; such that a reasonable trier of fact could make such findings.' " (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) In reviewing for substantial evidence, "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640; see *In re Nathan E.* (2021) 61 Cal.App.5th 114, 122 [" 'In making [a substantial evidence] determination, . . . we note that issues of fact and credibility are the province of the trial court.' "].) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

In *In re I.C.* (2018) 4 Cal.5th 869, 886 (*I.C.*), the Supreme Court explained: " '[T]here are particular difficulties with proving child sexual abuse: the frequent lack of physical

9

evidence, the limited verbal and cognitive abilities of child victims, the fact that children are often unable or unwilling to act as witnesses because of the intimidation of the courtroom setting and the reluctance to testify against their parents. [Citation.] Given these realities, the categorical exclusion of child hearsay . . . will often mean the exclusion of significant, reliable evidence required for the juvenile court to assert its jurisdiction over the child and to ultimately protect him or her from an abusive family relationship.' "

Due to these obstacles to obtaining direct testimony, section 355 " 'broadly authorize[s] reliance on any hearsay contained in the social study by a child victim under the age of 12, as long as an objecting party does not prove that the statement was procured by means of fraud, deceit, or undue influence.' " (*I.C., supra,* 4 Cal.5th at p. 885; see § 355, subd. (c)(1).) Hearsay from young children, like C.H., "may not be relied on exclusively unless the court finds that 'the time, content and circumstances of the statement provide sufficient indicia of reliability.' " (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1248 (plur. opn. of Mosk, J.) (*Lucero L.*).) Hearsay supported by indicia of reliability is sufficient to support a jurisdictional finding. (*Id.* at pp. 1242, 1245 (plur. opn. of Mosk, J.) [such statements "can serve as sole support for a jurisdictional finding"].)

## II.    Substantial Evidence Supported Jurisdiction

Here, C.H. spontaneously told her babysitter about father digitally penetrating her. She then repeatedly and consistently reported the sexual abuse to investigating adults at different times and in different contexts. Over a two-month period, C.H. disclosed to six different adults—her babysitter, mother, a police officer, two social workers, and the forensic interviewer—that

10

while at father's home, father placed his finger inside her vagina multiple times, causing her pain.  She stated the abuse happened while father's girlfriend was in the kitchen and her sister, M.H., could not see it because she was either turned away or on the other side of the couch.  As summarized above, C.H.'s statements remained largely consistent, with only minor variations, throughout the dependency investigation.  This constituted substantial evidence supporting jurisdiction over the children under both counts (d) and (j).  (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344 [substantial evidence supported the juvenile court's jurisdiction findings where, "although [the child]'s accounts of [her] father's abuse varied in the details, each account related essentially the same two incidents"].)

Father argues that we must reverse the jurisdictional finding because it was based entirely on C.H.'s uncorroborated statements and a young child's hearsay statements cannot be the sole basis for a jurisdictional finding of sexual abuse, citing *I.C., supra,* 4 Cal.5th at page 887.  In *I.C.*, a three-year-old was abused by an older child shortly before she made allegations against her father that were "strikingly similar" to the abuse incident involving the older child.  (*Id.* at p. 896.)  The three-year-old "had a tendency to blend fantasy with reality" and, despite promising to tell the truth, made several demonstrably false statements during her forensic interview.  (*Id.* at p. 894.)  In ruling on the allegations, the juvenile court noted that the only evidence consisted of the three-year-old's hearsay statements and observed that she appeared confused at times.  Nevertheless, because she had repeated the allegations on multiple occasions, the court found the evidence supporting the reliability of her statements more persuasive.  (*Id.* at pp. 881–882.)  In reversing jurisdiction,

11

the Supreme Court stated that the evidence of the prior molestation made this "an unusual situation," and the child's confusing statements did not show an indicia of reliability. (*Id.* at pp. 893–896.)

The case at bar substantially differs from *I.C.* Here, there was no prior molestation for C.H. to conflate with father's digital penetration. C.H. did not appear to be confused about the allegations she was making. In fact, when her sister dismissed the alleged abuse as father applying cream, C.H. insisted she was not talking about cream. Also unlike the child in *I.C.*, C.H. did not make demonstrably false statements after promising to tell the truth. And, most importantly, C.H. provided a factually consistent account of the digital penetration to six different adults in different settings over the span of two months (from late May to July 31, 2024).

Father urges that C.H.'s statements were unreliable because they were not corroborated. He argues that his girlfriend or M.H. should have heard or seen the sexual abuse, the physical exam of C.H. should have shown evidence of trauma given that C.H. stated the abuse occurred ten times per week, and "everyone who knew father said he would never do such a thing." He points out that eight-year-old M.H. said father never touched her or C.H. inappropriately.

However, the Supreme Court has clarified that "corroboration is not necessary" where there are sufficient indicia of reliability. (*Lucero L., supra,* 22 Cal.4th at p. 1249 (plur. opn. of Mosk, J.).) Here, as previously mentioned, the time, content, and circumstances of C.H.'s repeated disclosures made her hearsay statements reliable, independent of corroboration. Furthermore, that the girlfriend and M.H. did not witness or

know of the abuse is consistent with C.H.'s account of events. The absence of physical trauma does not establish that the abuse did not occur, particularly here, where then-three-year-old C.H. did not physically resist father and stated she did not bleed from the digital penetrations. Likewise, the fact that father enjoyed a good reputation and that others did not believe he was capable of such abuse does not establish his innocence. (See, e.g., *People v. McAlpin* (1991) 53 Cal.3d 1289, 1314 ["it is important to recognize that good character evidence, of even the most positive and probative sort, does not purport to establish conclusively that the defendant could not have committed the charged offense"].)

Father also points out that C.H. made inconsistent statements by additionally reporting that the penetration occurred in the bathroom or on the carpet, by telling her babysitter that she had told mother about the sexual assaults when she had not, and by stating that her sister punched her in her private parts. Yet, these discrepancies identified by father are insignificant in light of the overall consistent account provided by C.H. to six different people. Moreover, it was the juvenile court's responsibility to assess C.H.'s credibility and to determine the weight to be given to her statements, taking into account her age and the minor inconsistencies in her testimony. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court."]; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 199 ["an appellate court defers to the trier of fact . . . and has no power . . . to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence"].) Further, C.H.'s account of abuse

13

need not be perfectly consistent to support jurisdiction. (See *I.C.*, *supra*, 4 Cal.5th at p. 896 ["A child's account may reflect uncertainty, and may even contain some contradictions, and nevertheless warrant the court's trust."].)

To the extent father urges there was an innocent explanation for the penetration allegations—that he was applying cream to eczema—this too was an evidentiary issue for the juvenile court to weigh and assess. It is not enough that another factfinder might have reached a different conclusion; the question is whether substantial evidence supports the juvenile court's determination, which we will uphold even if substantial contrary evidence exists. (See *In re B.D.* (2021) 66 Cal.App.5th 1218, 1225 [upholding juvenile court findings where substantial evidence to the contrary exists]; *In re J.N.* (2021) 62 Cal.App.5th 767, 774 [" 'we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw' "].) Father's "arguments demonstrate the juvenile court could have resolved the evidentiary and credibility conflicts differently, but they do not show there was no substantial evidence to support the findings." (*In re E.G.* (2025) 112 Cal.App.5th 707, 722 [evidence sufficient when child gave "largely consistent, detailed report of [stepfather's] sexual abuse to at least six people" but later recanted due to familial pressure].)

We also reject father's argument that the "court's failure to view C.H.'s taped interview undercuts its conclusion her statements should be credited." To begin with, the record does not support father's claim that the court failed to review the recording. As part of discovery, the court ordered production of

14

the video, and nothing in the record suggests the court did not review it.  Moreover, father's counsel neither offered the video into evidence nor listed it as an exhibit.  Accordingly, any purported error was forfeited by counsel's failure to rely on the video at trial.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)

Furthermore, even assuming the juvenile court did not personally review the interview recording, the juvenile court was not required to review it so long as it had before it other competent, reliable evidence of C.H.'s disclosures.  (*In re Lucero L., supra,* 22 Cal.4th at pp. 1242, 1245 (plur. opn. of Mosk, J.) [hearsay statements in social study reports "can serve as sole support for a jurisdictional finding"].)  Here, the court considered statements from social workers, mother, the babysitter, the forensic interviewer, and law enforcement describing C.H.'s consistent disclosures.  On this record, substantial evidence supports the juvenile court's determination.

15

## DISPOSITION

The juvenile court's orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                              EDMON, P. J.


We concur:



        EGERTON, J.



        ADAMS, J.